IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § § | |
| v. § | Case No. 4:18-CR-00368 |
| § § | |
| SCOTT BREIMEISTER (02) § | |

**DEFENDANT BREIMEISTER'S OPPOSED MOTION TO BAR A RETRIAL BASED ON DOUBLE JEOPARDY, TO DISMISS THE SUPERSEDING INDICTMENT BASED ON OUTRAGEOUS GOVERNMENTAL CONDUCT, OR FOR OTHER RELIEF**

TO THE HONORABLE ALFRED H. BENNETT:

Defendant Scott Breimeister files this opposed motion to bar a retrial based on double jeopardy, to dismiss the superseding indictment based on outrageous governmental conduct, or for other relief, and would show as follows:[1]

I.

**PROCEDURAL HISTORY**

The procedural history of this case is well known to the Court and the parties. Of primary importance, on December 13, 2022—in sixth week of a jury trial and with the 21st prosecution witness on the stand—the Court declared a mistrial *sua sponte* because of multiple instances of governmental misconduct. When the Court took this drastic action—expressly not at the request of any defendant and over Breimeister's opposition—the Court and the defendants knew about several categories of misconduct:

---

[1] The Court instructed counsel to file this pleading before the status hearing scheduled for March 24, 2023. *See* Tr. Jan. 17, 2023, at 124.
  Also pending before the Court is the defendants' joint motion for an evidentiary hearing (Doc. 413). If the Court grants an evidentiary hearing, Breimeister will request leave to file a more thorough brief in support of this motion after the evidentiary hearing occurs. If the Court denies an evidentiary hearing, Breimeister will request leave to file a more thorough brief in support of this motion before the Court hears arguments on it.

1

(1) prosecutors instructed William Chan, a forensic accountant, to testify falsely about what information he relied on when preparing summary charts of financial activities, and the same prosecutors tried to conceal that information from the defense;

(2) on *numerous* occasions, law enforcement agents obtained information during witness interviews that was favorable to one or more than one defendant but omitted that information from the written reports ("302s") that the agents prepared for prosecutors and that prosecutors then produced to the defense to prepare for trial; these repeated omissions deprived the defendants of their constitutional rights to have counsel effectively confront and cross-examine those witnesses;

(3) prosecutors suppressed multiple 302s from the defense for witnesses who had testified, which deprived the defendants of their constitutional rights to effectively confront and cross-examine those witnesses; and

(4) prosecutors may have failed to correct instances of false or misleading testimony from government witnesses and stood silent when squarely asked to disclose whether they had information that would have impeached a witness on a material issue.

The Court has denied without prejudice the defendants' joint motion to depose witnesses (Doc. 391). Pending before the Court is the defendants' joint motion for an evidentiary hearing (Doc. 413) and a supplement in support of that motion (Doc. 424).

II.

**DOUBLE JEOPARDY**

Breimeister moves to bar a retrial because it would violate his Fifth Amendment constitutional right not to be twice placed in jeopardy of life or limb. *See* U.S. CONST. amend. V. Jeopardy attached when the Court impaneled and swore in the jury on November 9, 2022. *See Illinois v. Somerville*, 410 U.S. 458, 467-68 (1973). After jeopardy attached, Breimeister was

entitled to a verdict from that jury unless he consented to a mistrial or unless there was a manifest necessity to declare a mistrial. *Downum v. United States*, 372 U.S. 734, 738 n.1 (1963). A trial court has "authority to discharge a jury prior to verdict, and the Double Jeopardy Clause will not prevent retrial, *only if the trial court takes 'all the circumstances into consideration' and in its 'sound discretion' determines that 'there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.'*" *United States v. Perez*, 9 Wheat. 579, 580 (1824) (emphasis added). The "manifest necessity" test ordinarily applies when, over the defendant's objection, the prosecutor moves for a mistrial (that the court grants) or when the trial court declares a mistrial *sua sponte*. *See, e.g.*, *United States v. Dinitz*, 424 U.S. 600 (1976); *Somerville*, *supra*; *United States v. Jorn*, 400 U.S. 470, 485 (1971). A trial court properly exercises its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. *Somerville*, 410 U.S. at 464.

When considering whether a retrial would violate Double Jeopardy, a Court must resolve any doubt in favor of the defendant. *Downum*, 372 U.S. at 738 ("resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion'"). "[T]rial courts should have constantly in mind the purposes of the Double Jeopardy Clause to protect the defendant from continued exposure to embarrassment, anxiety, expense, and restrictions on his liberty, as well as to preserve his 'valued right to have his trial completed by a particular tribunal.'" *Somerville*, 410 U.S. at 472 (White, J., dissenting).

The novel question presented in this case is whether the "manifest necessity" test applies where the Court declared a mistrial based on governmental misconduct over Breimeister's objection. The Supreme Court has held that the Double Jeopardy Clause bars a retrial when the government "goads" the defendant into moving for a mistrial through an act of prosecutorial

3

misconduct because the prosecutor fears that the jury will acquit. *Oregon v. Kennedy*, 456 U.S. 667 (1982). But Breimiester did not move for a mistrial, and the Court expressly declared it *sua sponte*, so *Kennedy* does not directly apply. In the absence of controlling Supreme Court or Fifth Circuit precedent on this precise issue, this Court should conclude, under its supervisory authority, that intentional governmental misconduct that results in the *sua sponte* declaration of a mistrial bars a retrial under the Double Jeopardy Clause. *See, e.g., Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992) ("We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. Because the prosecutor's conduct in this case was intended to prejudice the defendant and thereby deny him a fair trial, appellant must be discharged on the grounds that his double jeopardy rights, as guaranteed by the Pennsylvania Constitution, would be violated by conducting a second trial.").

Importantly, the Supreme Court has not yet decided whether *Kennedy*'s "goading" test applies when a trial court declares a mistrial *sua sponte* based on governmental misconduct over the defendant's objection. The Fifth Circuit observed before *Kennedy* that the "manifest necessity" test does not apply to a double jeopardy analysis when a mistrial results from governmental misconduct. *See United States v. Alford*, 516 F.2d 941, 946 (5th Cir. 1975). ("Manifest necessity does not exculpate the prosecution from the constrictions of the double jeopardy clause where there has been prosecutorial overreaching."). The *Alford* Court recognized that the "manifest necessity" test would not apply had the prosecutor withheld valuable information from the defense and the Court and "been able to see the full defense while knowing that a defense motion for a mistrial, or a court declared mistrial, was likely." *Id.*

And that is what we have here. The prosecutors had knowledge—likely actual but at least

4

constructive—of favorable information that they withheld from Breimeister and the co-defendants. The defendants were not able to use that information during cross-examination of the impacted witnesses. All the while, the prosecutors realized Breimeister's defense through his opening statement and cross-examinations. *Alford* requires this Court to conduct the double jeopardy analysis without applying the "manifest necessity" test because the mistrial resulted squarely from governmental misconduct (as opposed to an unavailable witness or party, a hung jury, or some other hiccup in the ordinary administration of a trial separate from governmental misconduct).

But even if the "manifest necessity" test applies, there was not a manifest necessity to declare a mistrial *as to* Breimeister over his objection. A "heavy burden" is on the Government to prove that a manifest necessity existed. *Arizona v. Washington*, 434 U.S. 497, 505 (1978) (prosecutor must "shoulder the burden" of justifying mistrial to avoid double jeopardy bar). And courts apply strict scrutiny to determine whether a manifest necessity existed for a *sua sponte* mistrial. *Id.* at 506-08.

After the depth of the misconduct began to surface on December 12, 2022, the Court directed the parties to submit their requested relief in writing by 9:00 a.m. on December 13, 2022. Breimeister did that in an omnibus pleading submitted jointly with Swiencinski and McAda (Doc. 385). He explained his opposition to a mistrial, focusing on the bad public policy that would flow if the Government were allowed to retry him (Doc. 385 at 27-28) (emphasis in original):

> Declaring a mistrial at this juncture . . .would prejudice Breimeister for two reasons. First, it would deprive him of the opportunity to have the Court rule on Rule 29 motions after the Government rests or, alternatively, to have *this* jury try to reach verdicts based on the evidence presented in *this* trial—including the evidence of governmental misconduct that creates a reasonable doubt as to all of the prosecution's evidence. Second, declaring a mistrial would give the Government a windfall if it thereafter is permitted to retry Breimeister. Essentially, the Government would get a "do-over," or a second bite at the apple. It would be able to correct its mistakes and attempt to retry the case before a different jury that would not know about this egregious misconduct. The message to these prosecutors—indeed, to all prosecutors—is that you can try a case dirty once, and if you get caught, then you can retry the case clean a second time without consequence. The

>   law cannot permit that kind of gamesmanship. There must be punitive consequences for the misconduct. It would violate due process if the Government is allowed to retry Breimeister after causing a mistrial.

After addressing why he opposed a mistrial, Breimeister identified specific, alternative, curative measures that would allow the Court to continue the trial (at least as to him) without a mistrial (Doc. 385 at 28-29):

1.  allow cross-examination of Brad Madrid without any further examination by the Government;

2.  order the Government to rest its case-in-chief [after Madrid's testimony];

3.  strike the testimony and exhibits of all witnesses who have testified who are impacted in any way by the Government's misconduct;

4.  strike GX1 because of the Government's admission that it contains unreliable data;

5.  consider Rule 29 motions based on any remaining evidence after striking the affected testimony and exhibits;

6.  if the Court denies Rule 29 motions on any counts, give an instruction comparable to the *Grace* instruction previously provided to the Court by the defendants, except with additional language that the jury should draw an adverse inference from the Government's misconduct;

7.  permit the defendants to recall any of the prosecution witnesses whose testimony was struck; instruct the jury that it should not infer that the defendants have any burden of proof or production and that they are only recalling the witnesses because of the Government's misconduct; provide a limiting instruction for any defendant who does not want the recalled witness's testimony considered as substantive evidence of guilt against that defendant; and prohibit the Government from examining the recalled witnesses; and

8.  permit the defendants to present any witnesses in their cases-in-chief free from cross-examination by the Government.

Breimiester concluded, "This combination of relief is less drastic than declaring a mistrial but aims to compensate the respective defendants by making them whole and punishing the Government for its misconduct" (Doc. 385 at 29).

   The Government also opposed a mistrial and proposed alternative remedies so the Court

would continue with the trial. Indeed, the Government argued that the Court should not even strike the entire testimony of the affected witnesses. *See* Doc. 386 at 3 ("the Court has numerous other means to cure prejudice that the United States would agree to as less severe remedies, including precluding the United States from making certain arguments, striking only portions of testimony tied to the late-disclosed information, and instructing the jury as necessary regarding these remedies. The Court also can recall Mr. Carr or re-open cross-examination on him, which several other courts have found to be a sufficient remedy in similar situations); *id.* at 4 ("Given the potential remedies to address prejudice from the delayed disclosures, the Court need not take the 'drastic' remedy of striking the testimony of Carr or any other witness [in its] entirety, in light of the interests of justice, the victims, the public, and the Defendants."). Where the Government argued against a mistrial, it cannot now meet its "heavy burden" under *Arizona v. Washington* of proving that a manifest necessity existed to declare a mistrial.

Less than two hours after the parties had filed their requested relief, the Court took the bench and declared a mistrial *sua sponte*. In reaching this conclusion, it did not entertain any additional input or argument from the parties in open Court, nor did it confer with the jurors to determine if their schedules (and patience) would permit extending the trial beyond what was anticipated so they could hear all the evidence and try to reach a verdict. *Cf. United States v. Fisher*, 624 F.3d 713, 722 (5th Cir. 2010) (district court must make "painstaking examination of all relevant facts and circumstances" before declaring mistrial, that "naturally encompasses at least a careful consideration of any reasonable alternative to a mistrial"); *see also* FED. R. CRIM. P. 26.3 ("Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives."). By the Government's own admission, there was not a manifest necessity to declare a mistrial. Thus, assuming *arguendo* that the "manifest necessity"

7

test applies, none existed under these circumstances.

The Court should bar a retrial of Breimeister under the Double Jeopardy Clause. *See Jorn*, 400 U.S. at 487 (holding no manifest necessity to declare mistrial *sua sponte* where trial court acted abruptly without meaningfully considering other options); *see also United States v. Kin Ping Cheung*, 485 F.2d 689, 691 (5th Cir. 1973) ("the trial judge failed to consider alternatives to declaring a mistrial. Here, he declared the mistrial during the first trial without due consideration of the defendants' interest in having their guilt or innocence determined at *that* trial. The importance of this kind of consideration was established by the Supreme Court's decision in [*Jorn*]"; and, "the trial judge failed to inquire into the availability of less drastic techniques for dealing with the problems that arose . . . . It was accordingly improper for him to conclude that a 'manifest necessity' for a mistrial existed, or that the 'ends of public justice' demanded a mistrial"). Denial of this motion would unjustly enrich the Government because the mistrial would function not only to delay justice for Breimeister but also would operate "as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case." *Id.*

III.

**<u>DISMISSAL WITH PREJUDICE BASED ON GOVERNMENTAL MISCONDUCT</u>**

If the Court denies Breimeister's motion to bar a retrial based on Double Jeopardy, he moves to dismiss the superseding indictment with prejudice based on outrageous governmental misconduct. *See United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) ("An indictment may be dismissed with prejudice under either of two theories: [First, a] district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. [Second,] [i]f the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers.").

The Fifth Circuit has observed that governmental misconduct requires dismissal of an

indictment if it is "so outrageous" that it violates the principle of fundamental fairness under the due process clause of the Fifth Amendment. *United States v. Mauskar*, 557 F.3d 219, 231-32 (5th Cir. 2009) (noting that, "Had the government suborned perjury regarding the authenticity of signatures on the forged documents relating to the charges against Mauskar, the outcome of this appeal may have been different").

The governmental misconduct in this case requires dismissal of the superseding indictment with prejudice for several reasons. First, multiple law enforcement agents intentionally omitted favorable information obtained during multiple interviews with multiple witnesses from the typewritten summaries of those interviews. This was not a single, discreet instance; rather, it was pervasive among multiple agents and multiple witnesses throughout the entire investigation; and it impacted the entire trial. Second, the trial prosecutors were present for and participated in all or most of these witness interviews. Their attendance is crucial to this analysis because they cannot now claim that they lacked actual knowledge of the favorable information that was not disclosed to the defendants until the fifth week of trial. To the contrary, they had actual knowledge of these omissions, which made their conduct intentional, grossly outrageous, and extreme.

The Court should dismiss the superseding indictment with prejudice based on outrageous governmental misconduct that violated due process or, alternatively, under its supervisory powers. *See Chapman*, 524 F.3d at 1085; *United States v. Bundy*, 968 F.3d 1019, 1031, 1037-38 (9th Cir. 2020) (affirming dismissal of indictment with prejudice based on *Brady* violation under district court's supervisory authority and noting that misconduct need not be intentional because reckless disregard for prosecutor's constitutional obligations constitutes "flagrant misconduct"); *cf. United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018) ("this court has expressly declined to foreclose the possibility that governmental ineptitude and carelessness could be so abhorrent as to warrant a dismissal with prejudice").

IV.

**DISMISSAL WITHOUT PREJUDICE BASED ON GOVERNMENTAL MISCONDUCT**

If the Court denies Breimeister's motion to bar a retrial based on Double Jeopardy and his motion to dismiss the superseding indictment *with* prejudice, he moves to dismiss the superseding indictment *without* prejudice based on outrageous governmental misconduct. *See United States v. Diabate*, 90 F.Supp.2d 140 (D. Mass. 2000) (declaring mistrial and dismissing indictment without prejudice based on prosecution's discovery violations); *id.* at 151 ("This dismissal will, however, provide the government an opportunity to reflect on whether it really thinks that it is in the public interest to devote more resources to prosecuting [the defendant]."). The Supreme Court has recognized that dismissal without prejudice may not be as severe of a remedy as dismissal with prejudice, but it is "not a toothless remedy." *United States v. Taylor*, 487 U.S. 326, 342 (1988).

V.

**ALTERNATIVE RELIEF**

If the Court refuses to bar a retrial based on Double Jeopardy and denies Breimeister's motions to dismiss with and without prejudice, he requests the following alternative relief as punitive sanctions for the governmental misconduct that caused the mistrial:

1. disqualify the Fraud Unit of the Department of Justice, including the Health Care Fraud Task Force, and all prosecutors within the Fraud Unit, from participating in or representing the United States in this case moving forward, including at a retrial;

2. order that the United States pay all of Breimeister's legal fees and expenses associated with having to defend himself moving forward, including at a retrial;

3. instruct the jury panel during the *voir dire* examination at a retrial of the reasons for the retrial, including that the Court had to declare a mistrial at the first trial based on extensive governmental misconduct;

    4. permit Breimeister at a retrial to present evidence of the governmental misconduct that caused the Court to declare a mistrial at the first trial;

    5. order that the Government cannot present testimony from any of the witnesses who were the subjects of the suppressed evidence (including, but not limited to, Leonard Carr and Stacy Mayeur); and

    6. order that the Government cannot introduce any of the exhibits that were related to the governmental misconduct (including, but not limited to, GX 1, the spreadsheet of all the insurance claims and related summary charts).

Breimeister reserves the right to add to this non-exclusive list of alternative relief, if necessary.

Federal Rule of Criminal Procedure 16(d)(2) provides that the Court may exclude testimony or evidence as a sanction for "bad faith," prejudicial discovery violations. *See also United States v. Pherigo*, 327 F.3d 690, 694 (8th Cir. 2003) ("We review for abuse of discretion the district court's decision whether to exclude evidence to sanction a Government discovery violation. . . . In our review we consider (1) whether the Government acted in bad faith and the reason(s) for delay in production; (2) whether there is any prejudice to the defendant; and (3) whether any lesser sanction is appropriate to secure future Government compliance."); *United States v. Herrera*, 366 Fed. App'x 674, 676 (7th Cir. 2010) ("When considering a motion to exclude evidence [for a discovery violation], a district court should take into account whether the government acted in bad faith and whether any unfair prejudice to the defendant can be cured by a less severe alternative."). At this point, there are no less severe alternative remedies that would come close to curing the injuries that the Government has caused not only to Breimeister but also to the Court and the criminal justice system.

## CONCLUSION

Defendant Breimeister requests that the Court conduct an evidentiary hearing and grant this motion by either barring a retrial based on double jeopardy, dismissing the superseding indictment with or without prejudice, or ordering the alternative relief requested in this motion.

> Respectfully submitted,
>
> */s/ Josh Schaffer*
> Josh Schaffer
> TBN:   24037439
> 1021 Main Street, Ste. 1440
> Houston, Texas 77002
> (713) 951-9555
> (713) 951-9854 (facsimile)
> josh@joshschafferlaw.com
>
> */s/ Dan L. Cogdell*
> Dan L. Cogdell
> TBN:   04501500
> 1000 Main Street, Suite 2300
> Houston, TX 77002
> (713) 426-2244
> dan@cogdell-law.com
>
> **ATTORNEYS FOR DEFENDANT**
> **SCOTT BREIMEISTER**

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for the government, Alexander Kramer and Allan Medina, on March 21-22, 2023.  AUSA Medina stated that the Government opposes this motion.

> */s/ Josh Schaffer*
> Josh Schaffer

## CERTIFICATE OF SERVICE

I certify that I served this motion on counsel of record using the CM/ECF system on March 22, 2023.

> */s/ Josh Schaffer*
> Josh Schaffer