IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CASE NO. 4:18-CR-00368 |
| SCOTT BREIMEISTER (02) | § | |

**BREIMEISTER'S REPLY TO THE GOVERNMENT'S RESPONSES TO HIS MOTIONS TO DISCLOSE THE CASES ON WHICH MEMBERS OF THE "REVIEW TEAM" HAVE WORKED WITH MEMBERS OF THE "TRIAL TEAM" AND THE REPORTS AND ROUGH NOTES FROM THE WITNESS INTERVIEWS THAT THE "REVIEW TEAM" CONDUCTED WITH MEMBERS OF THE "TRIAL TEAM"**

TO THE HONORABLE ALFRED H. BENNETT:

Defendant Scott Breimeister files this reply to the Government's responses to his opposed motions for the Government to disclose all cases on which members of the "Review Team" have worked with members of the "Trial Team" (Doc. 469) and to disclose the reports and rough notes from the witness interviews that the "Review Team" conducted with members of the "Trial Team" (Doc. 478), and would show as follows:

I.

In a case where the Government has accused Breimiester of committing fraud, the Government has taught a master class in the art of deception. First, the trial prosecutors made numerous statements on the record before and during the trial that they had complied with their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Those statements were false and material, and the Court and defendants relied to their detriment on those deceptive misrepresentations. The trial prosecutors specifically tried to deceive the defendants by redacting William Chan's notes, which revealed that prosecutors had instructed him to testify falsely. Only because the Court granted the defendants' request to order the Government to disclose the unredacted notes did the sun shine on that deception. Then, the Court granted Breimeister's

1

request that the Court order the Government to disclose all its witness interview notes, which revealed a mountain of favorable information that the Government had withheld from the defendants. The exposure of that gross degree of systemic deception caused the Court to declare a mistrial *sua sponte*. The key lesson learned from this trial is that the Court cannot rely on this "Trial Team" to be honest or play by the rules.

After the mistrial, the Government had the opportunity to pull back the curtains and address this fiasco with transparency. That was the only responsible way to try to re-earn the Court's trust. It assigned its best crew to clean up the mess caused by the deception of the trial prosecutors. They called themselves the "Review Team," and they flashed their credentials as senior supervisors from the Department of Justice's Fraud Unit in Washington, D.C., presumably as currency to try to impress the Court. They talked earnestly about conducting their business seriously and with integrity. They told the Court that they worked "in the same section" as the trial prosecutors and "knew them." They asserted that they could and did conduct an impartial investigation.

But instead of disclosing the full extent of their relationships with the trial prosecutors and the notes or reports of their interviews with the "Trial Team," and instead of producing to the Court and the defendants a written post-mortem of what happened and why, the "Review Team" continued the deception. When Breimeister discovered that Alexander Kramer, a "Review Team" prosecutor, was co-counsel in a pending case in another district with Katherine Raut, a "Trial Team" prosecutor, he immediately informed the Court (Doc. 459). Breimeister then asked the "Review Team" to disclose all cases on which any of its members represented the Government along with any members of the "Trial Team." These relationships bear on the credibility and reliability of the Government's internal investigation. Conflicts of interest within these "Teams" would render this investigation worthless. The Government refused to disclose all the cases in which these prosecutors have worked or are working with each other. Breimeister filed a motion

2

requesting same (Doc. 469), which remains pending.

The Government says that it should not have to disclose the cases in which these prosecutors and agents have worked together because such a disclosure "would not provide any information of use to this Court" (Doc. 480 at 1). To the contrary. If the "Review Team" and the "Trial Team" have relationships in other cases, that information likely would cause the Court to disbelieve or place less weight on the representations that the "Trial Team" did not act intentionally or in bad faith when it suppressed volumes of favorable evidence. If the Court believes that the "Review Team" has tried to deceive the Court and the defendants about what caused the mistrial, that conclusion likely will impact how the Court rules on the pending motions for an evidentiary hearing and to dismiss the indictment based on outrageous government misconduct.

The Government is concerned about disclosing ongoing investigations (Doc. 480 at 4). Breimeister does not seek the names of those cases. There is an easy solution. The Government can disclose the names of past cases that have been resolved and pending cases that have been filed, and it can disclose the number (but not the names) of investigations that remain confidential in which members of the "Review Team" are working with members of the "Trial Team."

It is especially rich that, in a case in which the Government withheld favorable, material information from the defendants—and that caused the Government to dismiss co-defendant Redko—the Government wants to continue to withhold information because it knows best what would be "useful" to the Court. The Government hopes that it is sufficient to concede that Allan Medina "was responsible for overseeing matters prosecuted by [Aleza] Remis and [Devon] Helfmeyer," and that Alexander Kramer "works with and supervises [Katherine] Raut and some of her cases" (Doc. 480 at 2-3). Those admissions demonstrate that these prosecutors have worked together on more cases than the one that Breimeister discovered. The conflicts clearly run deeper. The deception continues. Just as Chan's notes and the agent interview notes required disclosure

at trial, the full extent of the relationships between the "Review Team" and the "Trial Team" require transparency. Now. If the Government continues to resist this request, that is the strongest tell that its internal investigation was a sham.

But there is more. Breimeister has requested disclosure of the agent reports and rough notes from all witness interviews that the "Review Team" conducted with members of the "Trial Team" (Doc. 478). That is the same type of request that the Court granted mid-trial that revealed the misconduct that caused the mistrial. At the most recent hearing, the "Review Team" presented a flashy Power Point slide show that merely regurgitated trial exhibits. It reported almost no substantive explanations from the "Trial Team" for the mountain of suppressed evidence. At one point, Medina let it slip that Agent Dino Vergara made conscious decisions to exclude information contained in his handwritten interview notes from his typed reports of the witness interviews. And that revelation demonstrates why the Court should order the Government to disclose all the reports and rough notes of the "Trial Team" interviews. Otherwise, the Court only has the conflicted "Review Team's" conclusory assurance that this is "much ado about nothing," without a written report of the internal investigation, without witness statements, and without rough notes of the witness interviews. The Government continues to oppose an evidentiary hearing. They are ducking, running, and hoping that the passage of time will cool the Court's temperature. The Court cannot let that tactic work.

The Government responds to the request for the rough notes of the witness interviews by asserting that the law does not require such production (Doc. 490 at 1). An Article III Judge has the supervisory power to order the Government to produce the notes—just as this Court did during the trial. Those notes may answer some of the questions that the "Review Team" so artfully tried to avoid answering in the courtroom. The notes also will inform the Court's decision whether to conduct an evidentiary hearing. If the Court is not prepared to order the Government to produce

the notes to the defendants, it should order the production directly to the Court for *in camera* inspection so the Court can decide whether to give them to the defendants.

The Government asserts that the rough notes are excluded from production under Rule 16(a)(2) because they are internal government documents made in connection with "investigating or prosecuting the case" (Doc. 490 at 3). Those notes have nothing to do with the prosecution *of the defendants*. Rather, they are connected to a post-trial investigation into the conduct *of the trial prosecutors and agents*. And there can be no dispute that, if the interviews with the "Trial Team" were connected to a potential prosecution *of those persons*, Breimeister is entitled to them under *Brady*. The Government should notify the Court whether that was the purpose of creating those notes. Regardless, Rule 16(a)(2) does not bar production of them under these circumstances.

The Government asserts that the rough notes do not constitute *Brady* material because they are related to a collateral matter and are not exculpatory, impeaching, or mitigating of the charged conduct (Doc. 490 at 4). If the contents of the notes *could* cause the Court to grant relief to any defendant on any of the pending dispositive motions, they are favorable and must be disclosed. Given the history of the Government's conduct in this case, it should not quibble with the scope and contours of *Brady*. It should simply heed Spike Lee's advice to every child of the 1980s, as delivered to Mookie: "Always do the right thing."

## **CONCLUSION**

The Government continues to keep the curtains closed on what caused the suppression of so much evidence. It is long overdue to pull them back so the sun can shine brightly on the "Trial Team" in open court. The Court should order the Government to disclose all cases on which members of the "Review Team" have worked with members of the "Trial Team" and the reports and rough notes from the witness interviews that the "Review Team" conducted with members of the "Trial Team."

Respectfully submitted,

*/s/ Josh Schaffer*
Josh Schaffer
TBN: 24037439
1021 Main Street, Ste. 1440
Houston, Texas 77002
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com

*/s/ Dan L. Cogdell*
Dan L. Cogdell
TBN: 04501500
1000 Main Street, Suite 2300
Houston, TX 77002
(713) 426-2244
dan@cogdell-law.com

**ATTORNEYS FOR DEFENDANT
SCOTT BREIMEISTER**

## CERTIFICATE OF SERVICE

I certify that I served this motion on counsel of record using the CM/ECF system on May 24, 2023.

*/s/ Josh Schaffer*
Josh Schaffer

6