IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CASE NO. 4:18-CR-00368 |
| | § |
| SCOTT BREIMEISTER (02) | § |

**BREIMEISTER'S REPLY TO THE GOVERNMENT'S RESPONSE
TO HIS MOTION TO BAR A RETRIAL BASED ON DOUBLE JEOPARDY**

TO THE HONORABLE ALFRED H. BENNETT:

Defendant Scott Breimeister replies to the Government's response (Doc. 479) to his opposed motion to bar a retrial based on Double Jeopardy (Doc. 428), and would show as follows:

I.

> "If I had a world of my own, everything would be nonsense. Nothing would be what it is, because everything would be what it isn't. And contrary wise, what is, it wouldn't be. And what it wouldn't be, it would. You see?"
>
> —Lewis Carroll, "Alice's Adventures in Wonderland" (1865)

The Government's response to Breimeister's Double Jeopardy motion borders on nonsense. It relies almost exclusively on the assertion that he requested a mistrial and did not object to the Court's *sua sponte* declaration of a mistrial. (Doc 479 at 1 ("Not only did several of the defendants here *request* a mistrial, they did not object when the court declared a mistrial") (emphasis in original); 7 ("None of the Defendants Timely and Explicitly Objected to the Court's declaration of a Mistrial")). It accuses counsel for Breimeister of "an inaccurate recitation of the facts" (Doc. 479 at 9). Counsel for Breimeister was present in court for the events at issue; the authors of the Government's response—the third team of Government prosecutors assigned to this case in the past six months—were not. So let's break down what really happened.

When the Court announced its rulings related to the summary chart exhibits that the

Government offered through William Chan on December 6, 2022, Breimeister joined Redko's request for a mistrial as it related to the Court's admission of GX 43. *See* Tr. Trans. 12/6/22 at 95:15-20. **_That occurred before the Court and the defendants discovered any of the governmental misconduct related to Chan or the suppressed evidence contained in the agents' rough notes._** Breimeister **_never_** requested a mistrial after the Court ordered the Government to produce Chan's unredacted notes and the agents' rough notes. Yet, the Government does not discuss the timing of the December 6 request for a mistrial or the reason for that request. Instead, it slickly suggests that Breimeister's request for a mistrial—**_one week before_** the Court declared a mistrial *sua sponte*—is relevant to whether he may now raise the Double Jeopardy issue. Shame on the Government for implying that Breimeister's request for a mistrial because the Court admitted GX 43 on December 6 precludes him from litigating his Double Jeopardy claim based on the Court's declaration of a mistrial on December 13. The prosecutors have an ethical duty to be candid with the Court, and they failed on this point.

The Government essentially suggests a rule that a defendant cannot raise a Double Jeopardy claim after a court declares a mistrial—even if the defendant did not make that request—if he previously requested a mistrial for a different reason. That is not and cannot be the law. Only prosecutors, who need not preserve error for appeal, could make such an argument. The law requires defendants to object, request instructions to disregard, and request mistrials to preserve error for appellate review. A request for a mistrial in response to the admission of an exhibit in the fifth week of trial does not constitute a request for a mistrial one week later based on pervasive, outrageous governmental misconduct discovered in the sixth week of trial. If the Government has its way on this point, defendants would be chilled from preserving error for appellate review during the course of a criminal trial, lest they risk waiving or forfeiting the chance to lodge a future Double Jeopardy motion based on undiscovered governmental misconduct. The law does not require that.

And the Government continues with its fantastic narrative by suggesting that Breimeister did not "timely and explicitly" object to the mistrial (Doc. 479 at 7, 9-10). On December 12, 2022, the Court instructed the parties to file a pleading on December 13 addressing the impact of the agents' rough notes that would be disclosed that evening and any requested relief. The Court suggested that it was considering a potential mistrial. To be clear, the Court did not declare a mistrial on December 12. But the Government now faults Breimeister for not objecting at that moment to a *potential* future declaration of a mistrial (Doc. 479 at 3 ("The other three defendants did not clearly request or object to a mistrial."); 9 ("[Breimeister] failed to object to the Court's reference to a potential declaration of a mistrial on December 12, 2022")). The law does not require a defendant to object when a court says that it *might* take certain action in the future.

As ordered, Breimiester filed a written pleading on the morning of December 13 that began, "***Breimeister opposes a mistrial at this juncture*** unless one or more of the following occurs," which set forth certain conditions under which he would not oppose a mistrial, including a contemporaneous finding of governmental misconduct by the Court (Doc. 385 at 27) (emphasis added). He then discussed at length the unfairness that would flow if the Court declared a mistrial *and* subsequently permitted a retrial, including that it would violate the Fifth Amendment (Doc. 385 at 27-28). He proposed eight alternatives so the trial could proceed (Doc. 385 at 28-29).

Breimeister could not have objected more clearly, forcefully, or extensively to the declaration of a mistrial ***without an accompanying finding of governmental misconduct***. As the Government notes, the Court has never made a finding that the Government engaged in any misconduct; and the Government has consistently disputed that it committed any misconduct (Doc. 479 at 10, n. 8). Despite the clarity of Breimiester's opposition to a mistrial, the Government relegates that fact to footnotes in the hope that the Court will gloss over that important detail (Doc. 479 at 3, n.1; 9, n. 7). Instead, it asserts that his written opposition filed two hours before the Court

3

took the bench to declare a mistrial "does not excuse his later failure to object to the Court's finding" (Doc. 479 at 9). Those who were in the courtroom on the morning of December 13, 2023, recall that the Court did not want to hear from the parties on the matter. *See* Tr. Trans. 12/7/2022 at 4:6-8 (rough) ("I've read the filings. I could invite additional comment. I'm not sure it would alter the course that this Court has determined it must take."). The Government also faults Breimeister for not objecting after the Court declared the mistrial—even though the Court stated that it had read his pleading (Doc. 479 at 9). The Court spoke uninterrupted for about 30 minutes and abruptly left the bench without inviting any comment. *See* Tr. Trans. 12/7/2022 at 10-11 (rough) ("At 12:30, the jury will be here. You're expected to be here.").

The bottom line is that Breimeister lodged a timely, specific objection to the declaration of a mistrial unless the Government made certain representations or the Court made certain findings. None of those representations or findings were made, so the mistrial occurred over his objection. The law does not require a defendant to scream, "objection," *ad nauseum*. Once is enough. In short, the Court declared a mistrial over his objection, so he now benefits from the most favorable, applicable standard of review of his Double Jeopardy claim. And to be clear, Breimiester is not aware of any Supreme Court or Fifth Circuit case requiring a defendant to object to a court's *sua sponte* declaration of a mistrial *based on governmental misconduct*. Nor does he concede that an objection was necessary under the circumstances. So to borrow a phrase from the Government, the issue of preservation may all be "much ado about nothing."

## II.

It is an open question in the Supreme Court and the Fifth Circuit whether the manifest necessity test applies to a court's *sua sponte* declaration of a mistrial based on governmental misconduct. This Court operates from a place of *tabula rasa*. Even if the test applies, the Government has the burden to prove that a manifest necessity existed, and courts apply a strict

scrutiny test to that question. *Arizona v. Washington*, 434 U.S. 497, 505-08 (1978). A manifest necessity did not exist here because Breimeister and the Government agreed that reasonable alternatives existed for the trial to proceed; they proposed those alternatives before the Court declared a mistrial; and the Court did not confer with the jury before declaring a mistrial to determine whether those alternatives were viable. But Breimeister does not concede that the manifest necessity test applies where the mistrial resulted from governmental misconduct.

The Fifth Circuit suggested almost 50 years ago that the manifest necessity test does not allow the Government to retry a defendant when the mistrial resulted from "prosecutorial overreaching." *United States v. Alford*, 516 F.2d 941, 946 (5th Cir. 1975). The Government asserts that *Alford* was *dicta* and inapposite, and it criticizes the defendants for not "demonstrat[ing] how there was any 'prosecutorial overreaching'" (Doc. 479 at 16). The defendants have made repeated requests to depose the government witnesses or conduct an evidentiary hearing to make such a showing. Breimeister accepts the Government's invitation to make that demonstration in exchange for the Government's agreement to participate. The Court should not tolerate the Government's engaging in misconduct that causes a mistrial, refusing to answer questions about how that happened, and then criticizing the defendants for not proving that misconduct occurred.

In the end, the Government clings to a manifest necessity test that should not apply where governmental misconduct caused the Court to declare a mistrial *sua sponte*. Otherwise, nothing would disincentivize the Government from engaging in misconduct because, even if a court declared a mistrial, the Government would know that it could retry the defendant. That is terrible public policy. As Breimeister wrote on December 13, 2022 (Doc. 385 at 28):

> … declaring a mistrial would give the Government a windfall if it thereafter is permitted to retry Breimeister. Essentially, the Government would get a "do-over," or a second bite at the apple. It would be able to correct its mistakes and attempt to retry the case before a different jury that would not know about this egregious misconduct. The message to these prosecutors—indeed, to all prosecutors—is that you can try a case dirty once, and if you get caught, then you can retry the case

clean a second time without consequence. The law cannot permit that kind of gamesmanship. There must be punitive consequences for the misconduct.

If the Government is permitted to retry Breimeister after what it did to cause the mistrial, as Lewis Carroll wrote more than 150 years ago, "everything would be nonsense."

## CONCLUSION

The Court should grant Breimeister's motion and order that a retrial would violate the Double Jeopardy Clause of the Fifth Amendment.

Respectfully submitted,

*/s/ Josh Schaffer*
Josh Schaffer
TBN:  24037439
1021 Main Street, Ste. 1440
Houston, Texas 77002
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com

*/s/ Dan L. Cogdell*
Dan L. Cogdell
TBN:  04501500
1000 Main Street, Suite 2300
Houston, TX 77002
(713) 426-2244
dan@cogdell-law.com

**ATTORNEYS FOR DEFENDANT SCOTT BREIMEISTER**

## CERTIFICATE OF SERVICE

I certify that I served this motion on counsel of record using the CM/ECF system on May 25, 2023.

*/s/ Josh Schaffer*
Josh Schaffer