IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § § § |
| v. | §  Case No. 4:18-CR-00368 |
| SCOTT BREIMEISTER (02) | § § § |

**DEFENDANT BREIMEISTER'S OBJECTIONS TO THE ORDER
DENYING HIS MOTION TO BAR A RETRIAL BASED ON DOUBLE JEOPARDY**

TO THE HONORABLE ALFRED H. BENNETT:

Defendant Scott Breimeister objects to the order denying his motion to bar a retrial based on Double Jeopardy (Doc. 513), and would show as follows:

I.

Breimeister filed an omnibus motion on March 22, 2023, requesting a variety of relief: (1) to bar a retrial based on Double Jeopardy (Doc. 428 at 2-8); (2) to dismiss the indictment *with* prejudice based on outrageous governmental misconduct (Doc. 428 at 8-9); (3) to dismiss the indictment *without* prejudice based on outrageous governmental misconduct (Doc. 428 at 10); and (4) for alternative relief as punitive sanctions for the governmental misconduct if the Court denied the first three motions (Doc. 428 at 10-11). The pleading presented cascading requests so that, if the Court granted the first motion, it need not address the remainder. The Court heard argument on the first motion—to bar a retrial based on Double Jeopardy—on May 26, 2023.

Other significant defense motions were pending when the Court heard argument on the Double Jeopardy issue. Notably, Breimeister had asked to depose specific witnesses who engaged in or had knowledge of the governmental misconduct (Doc. 391). Alternatively, he requested an evidentiary hearing to determine the cause and rationale for the governmental misconduct (Doc. 413). He also asked the Court to order the Government to disclose the conflicts of interest between

1

the prosecutors assigned to review the misconduct and the prosecutors and agents who committed the misconduct (Doc. 469), as well as the reports and rough notes from the interviews that the reviewing team conducted with the trial team (Doc. 478).

The Court issued an order denying the Double Jeopardy motion and the motion for an evidentiary hearing on June 27, 2023 (Doc. 513 at 2, 4). Notably, that order did not address the remaining motions contained in Doc. 428—the motion to dismiss the indictment *with* prejudice based on outrageous governmental misconduct, the motion to dismiss the indictment *without* prejudice based on outrageous governmental misconduct, and the requested alternative relief should the Court refuse to bar a retrial based on Double Jeopardy or dismiss the indictment based on governmental misconduct. Nor did the order address the motions to disclose the conflicts of interest (Doc. 469) and the reports and rough notes (Doc. 478). Accordingly, those motions remain pending while Breimeister appeals the denial of the Double Jeopardy issue and the evidentiary hearing to the Fifth Circuit. Should the Fifth Circuit affirm the Court's denial of the Double Jeopardy issue and the evidentiary hearing, Breimeister will then ask the Court to consider the remaining outstanding motions.

II.

Breimeister moved to bar a retrial because it would violate his Fifth Amendment constitutional right not to be twice placed in jeopardy of life or limb. *See* U.S. CONST. amend. V. Because the Court declared a mistrial *sua sponte* and over Breimeister's objection based on governmental misconduct, he argued that the "manifest necessity" test need not apply. He also argued that he need not prove that the Government intentionally engaged in misconduct to "goad" a mistrial because he did not request the mistrial. Therefore, the Supreme Court's test from *Oregon v. Kennedy*, 456 U.S. 667 (1982), did not apply. This is an issue of first impression in the Fifth Circuit, and the Supreme Court has not yet addressed what test applies when a trial court declares

a mistrial *sua sponte* and over a defendant's objection because of governmental misconduct.

The Court did not address Breimeister's argument that the manifest necessity test does not apply in this context. Instead, it found that a manifest necessity existed to declare a mistrial over his objection (Doc. 513 at 2-3). He objects to the Court's application of the manifest necessity test in the first place, where the Court declared a mistrial based on governmental misconduct over his objection. He also objects where the Supreme Court has not held that *Kennedy*'s "goading" test applies when a court declares a mistrial *sua sponte* based on governmental misconduct over the defendant's objection. *See United States v. Alford*, 516 F.2d 941, 946 (5th Cir. 1975). ("Manifest necessity does not exculpate the prosecution from the constrictions of the double jeopardy clause where there has been prosecutorial overreaching.").[1] *Alford* required this Court to conduct the Double Jeopardy analysis without applying the manifest necessity test because the mistrial resulted squarely from governmental misconduct (as opposed to an unavailable witness or party, a hung jury, or some other hiccup in the ordinary administration of a trial separate from governmental misconduct). Breimeister objects to the Court's failure to apply *Alford* to his case.

### III.

Assuming *arguendo* that the manifest necessity test does apply, Breimeister objects to the Court's application of the test. It essentially found that the jury could not or would not have followed instructions to disregard testimony (Doc. 513 at 3). Breimeister objects to the finding that this jury would not or could not have followed instructions. Nothing had occurred during the trial to suggest that the jury struggled to follow the Court's instructions, and the Court already had given an unusual instruction after the William Chan Incident without any concern that the jury

---

[1] The *Alford* Court commented that the "manifest necessity" test would not apply had the prosecutor withheld valuable information from the defense and the Court and "been able to see the full defense while knowing that a defense motion for a mistrial, or a court declared mistrial, was likely." *Id.* That is exactly what happened in this case.

could follow that instruction.

The Court also found that a manifest necessity existed for a mistrial because the trial "would have been extended an untold number of weeks" (Doc. 513 at 3). The trial had lasted five weeks when the Court declared a mistrial on December 13, 2022—a point at which the Government had told the Court that it was only one or two days away from resting its case. Based on the *voir dire* examination, the jury was prepared for the trial to last into January of 2023. Had the trial proceeded—as Bremiester requested—it might have lasted two or three more weeks at most. That would have aligned with the jury's expectations. More importantly, it would have taken much less time to finish the trial than the additional two-to-three years that it will take for the parties to litigate the Double Jeopardy issue and, if necessary, retry the case. *See Illinois v. Somerville*, 410 U.S. 458, 472 (1973) (White, J., dissenting) ("[T]rial courts should have constantly in mind the purposes of the Double Jeopardy Clause to protect the defendant from continued exposure to embarrassment, anxiety, expense, and restrictions on his liberty, as well as to preserve his 'valued right to have his trial completed by a particular tribunal.'"). Moreover, the Court failed to ask the jurors if they could endure a lengthier trial before declaring a mistrial. Breimeister objects to the finding that continuing the trial would have taken too long and been too onerous on the jurors where the Court did not first question them and where they were prepared to be in trial for another month anyway.

The Court also found that a manifest necessity existed to declare a mistrial because an admonishment of the Government in the jury's presence may have prejudiced the Government from receiving a fair trial (Doc. 513 at 3). So what? A defendant has a constitutional right to a fair trial, but the Government does not. Where the Government engages in misconduct severe enough for a court to entertain declaring a mistrial *sua sponte*, it forfeits any "right" not to be prejudiced by an admonishment before the jury. Where the Government caused the mistrial,

4

Breimeister objects to the finding that a manifest necessity existed to declare a mistrial because the Court needed to protect the Government from the consequences of its own actions.

When considering whether a retrial would violate Double Jeopardy, a Court must resolve any doubt in favor of the defendant. *Downum v. United States*, 372 U.S. 734, 738 (1963) ("resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion'"). The Court gave no doubt to Breimeister in its analysis of the Double Jeopardy issue. He objects to the Court's failure to do so.

IV.

The Court also denied the Double Jeopardy motion, in part, because a grand jury had issued a superseding indictment, meaning probable cause existed to establish that Breimeister committed the alleged crimes (Doc. 513 at 3). It found that barring a retrial based on Double Jeopardy would "essentially erase [Breimeister's] conduct and eliminate the Government's opportunity to hold [him] accountable for actions that have been deemed potentially criminal by a grand jury." Neither the Supreme Court, the Fifth Circuit, nor any other court that counsel knows of has ever held that the existence of an indictment and a finding of probable cause factors into a Double Jeopardy analysis. Indeed, a grand jury indicted every defendant who has ever alleged that a retrial was barred by Double Jeopardy. By the Court's logic, no defendant ever would be entitled to Double Jeopardy relief because a grand jury's finding of probable cause trumps the constitutional right not to be twice placed in jeopardy. That is not the law, never has been the law, and never will be the law. Otherwise, the Double Jeopardy Clause would be forever mooted by the non-adversarial finding of a grand jury. Furthermore, the Court's finding that the Government would lose its "opportunity" to hold Breimeister accountable for potential criminal conduct is too much. The Government had an opportunity to try to convict him during the first trial had it played by the rules and timely disclosed the favorable evidence. It forfeited that opportunity by engaging in

5

misconduct that the Court deemed so egregious that it warranted a mistrial. The entire point of Double Jeopardy is to prevent the Government from taking unlimited—or even two—bites at the apple. Especially where the Government caused the first bite to be rotten. Breimeister objects to the Court's finding that the existence of an indictment and a grand jury's determination of probable cause bars Double Jeopardy relief.

V.

The Court found that "[i]ntentional prosecutorial misconduct should not be rewarded with a second chance at prosecution" (Doc. 513 at 3). Where a court declares a mistrial *sua sponte* and *over a defendant's objection* based on any prosecutorial misconduct—whether it be intentional, knowing, reckless, or even negligent—the Government should not "be rewarded" with a retrial. Breimeister objects to the Court's conclusion—unsupported by any citation to authority—that only intentional misconduct bars a retrial where the Government admittedly engaged in the conduct that caused the mistrial and the Court declared it over his objection.

The Court's resolution of this particular factor was especially unfair and unreasonable where it continuously refused Breimeister's repeated requests to conduct a transparent, adversarial evidentiary investigation into how and why the governmental misconduct occurred and where it refused his efforts to fully and publicly develop the record to determine the culpable mental state of the government actors responsible for the misconduct. Instead, the Court shut down, ignored, or denied these efforts and allowed the Government to give speeches in the courtroom but protected its prosecutors and agents from having to answer a single question posed by a defendant. The Court did not make the Government file any report on its "internal investigation." Anything that the Government filed regarding the substance of its review of the misconduct was filed *ex parte* and under seal. Breimester was frozen out of the opaque inquiry and relegated to a sideline commentator.

The denial of an evidentiary hearing was especially erroneous where the Government slipped up during a status conference and admitted that a lead case agent had suppressed evidence intentionally. Prosecutor Allan Medina told the Court that agent Dino Vergara—who sat at the Government's table during the trial and authored many of the 302s at issue—admitted that he did not include information in 302 reports that witnesses told him (and trial prosecutors) during interviews, even if that information was in his handwritten rough notes, if he did not have an independent memory of the witness making the statement or did understand his notes. In other words, Vergara made a conscious decision to exclude information that witnesses provided to the Government from the 302 reports that the Government then provided to the defense. Strange how the excluded information was favorable to the defendants. Breimeister begged the Court to grant an evidentiary hearing in light of the Government's admissions regarding Vergara. He objects to the Court's refusal to do so.

The denial of an evidentiary hearing is especially unfair where the Court decided to impose a *mens rea* element to the Double Jeopardy analysis. Had the Court agreed with Breimeister's argument that he need not prove that the governmental misconduct was intentional—because any *sua sponte* mistrial declared over the defendant's objection based on governmental misconduct bars a retrial under Double Jeopardy—then an evidentiary hearing would have been unnecessary. Breimeister told the Court as much during a hearing. However, the Court implicitly rejected this argument by finding that only intentional misconduct bars a mistrial. The Court acknowledges that it conducted hearings and status conferences and "invited input from the Defendants, giving them multiple opportunities to argue their positions regarding consequences and pathways forward" (Doc. 513 at 4). But the Court did not permit Breimeister to call any witnesses, ask any questions, or conduct an evidentiary investigation. It did not allow him to view the fruit of the Government's internal investigation. Instead, based on only arguments but no evidence that

Breimeister could see or respond to, the Court concluded that the trial prosecutors' "conduct was not malicious or intentionally fraudulent" (Doc. 513 at 4). "Malice" and "intentional fraud" are not the standards in any Double Jeopardy test, and the Court cited no authority to support its application of that standard. Breimeister objects to the denial of an evidentiary hearing and Double Jeopardy relief based on the Court's finding that the trial prosecutors did not act with "malice" or "intentional fraud" because that is not the standard. Even if it were, he objects where one or more of the trial prosecutors was present for the witness interviews that yielded the favorable *Brady* information that was suppressed. They had actual knowledge that the favorable information was excluded from the 302s when they produced the incomplete, misleading 302s to Breimeister.

Moreover, the Court only made findings regarding the three trial prosecutors. It ignored whether the case agents who authored the incomplete, misleading 302s intentionally or knowingly omitted the favorable *Brady* information that was in their rough notes. Breimeister objects to the Court's failure to make any findings regarding the case agents, to the denial of an evidentiary hearing to explore why the case agents made these omissions, and to the denial of Double Jeopardy relief where the *prima facie* evidence on the issue weighs in Breimeister's favor.

In conclusion, Breimeister objects to the *process* by which the Court conducted the Double Jeopardy analysis because it prevented him from participating in a meaningful, adversarial way. Indeed, the Court acknowledged that its conclusion that the prosecutors did not intentionally suppress evidence was "[b]ased on the Court's own review and the results of the Government's own investigation into its trial team's actions" (Doc 513 at 4). Breimeister was not allowed to participate in that investigation, was not allowed to review the product of that investigation, and was not allowed to respond to that investigation (because he did not know what it revealed). The manner in which the Court conducted the Double Jeopardy analysis denied Breimeister due process of law.

Breimeister ends where he began. When considering whether a retrial would violate Double Jeopardy, a Court must resolve any doubt in favor of the defendant. *Downum,* 372 U.S. at 738. The Court ignored that mandate here. He objects to the order denying Double Jeopardy relief and an evidentiary hearing.

Respectfully submitted,

*/s/ Josh Schaffer*
Josh Schaffer
TBN:  24037439
1021 Main Street, Ste. 1440
Houston, Texas 77002
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com

*/s/ Dan L. Cogdell*
Dan L. Cogdell
TBN:  04501500
1000 Main Street, Suite 2300
Houston, TX 77002
(713) 426-2244
dan@cogdell-law.com

**ATTORNEYS FOR DEFENDANT
SCOTT BREIMEISTER**

## CERTIFICATE OF SERVICE

I certify that I served this motion on counsel of record using the CM/ECF system on September 1, 2023.

*/s/ Josh Schaffer*
Josh Schaffer
