# United States Court of Appeals
# for the Fifth Circuit

United States Courts
Southern District of Texas
FILED

*May 22, 2025*

Nathan Ochsner, Clerk of Court

No. 23-20326

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2025

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

SCOTT BREIMEISTER,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CR-368-2

---

Before HAYNES, DUNCAN, and WILSON, *Circuit Judges*.

CORY T. WILSON, *Circuit Judge*:

Scott Breimeister and four codefendants were jointly tried for allegedly defrauding public and private healthcare programs out of more than $140,000,000. Five weeks into trial—after the testimony of twenty-one Government witnesses—the Government made a series of late disclosures of evidence favorable to the defense which impacted nearly a third of the testimony to date. The district court explored possible remedies for the Government's breach, but ultimately found the curative measures proposed by the parties unlikely to produce a fair verdict. The court *sua sponte* declared a mistrial, and Breimeister then moved to bar retrial. The district court

No. 23-20326

denied that motion, finding that the Double Jeopardy Clause did not preclude a second trial because the mistrial was a "manifest necessity." Breimeister now brings this interlocutory appeal, and we affirm.

## I.

Scott Breimeister and four other defendants allegedly engaged in a scheme to defraud public and private healthcare programs through a chain of Houston-area pharmacies. Their indictment alleges that the five codefendants submitted and caused to be submitted "false and fraudulent claims for compounded drugs, 'kits,' 'patches,' and other prescription drugs." Further, Breimeister and his codefendants allegedly took "actions to conceal the scheme or obstruct the investigation" while defrauding the programs of more than $140,000,000 and individually profiting "between hundreds of thousands of dollars and tens of millions of dollars."

The defendants jointly proceeded to trial. During five weeks of trial, the Government presented twenty-one witnesses and a host of exhibits intended to summarize the alleged fraudulent transactions. One of the Government's final witnesses, a certified public accountant and certified fraud examiner named William Chan, testified that he prepared twelve of the Government's summary exhibits, utilizing only the source materials listed on the exhibits (primarily bank records) and the assistance of one accounting-firm colleague. However, cross-examination exposed holes in Chan's methodology and source materials that raised concerns with the district court about the exhibits' reliability. Based on those concerns and at the defense's request, the court ordered the Government to produce the unredacted notes Chan kept while preparing his summary exhibits.

Chan's unredacted notes conflicted with his testimony in two material ways. First, they revealed that Chan had worked closely with the Government to prepare his summary exhibits, rather than with just one

No. 23-20326

accounting-firm colleague. Second, they showed that Chan relied on sources beyond those listed on the exhibits. Specifically, Chan's notes indicated that he relied on previously undisclosed Government files and that the Government instructed him as to which sources he should and should not cite on the summary exhibits. The defense's continued cross-examination of Chan confirmed those inconsistencies.

The defense moved to strike the entirety of Chan's testimony and exhibits. The district court granted the motion in part, striking four summary exhibits and Chan's related testimony and instructing the jury to disregard them. The Government then conducted its redirect examination of Chan.

Following Chan's testimony, the district court ordered the Government to revisit its files and ensure that all transcripts and notes from the Government's pre-trial interviews of witnesses were turned over to the defense. Over the intervening weekend, the Government disclosed additional interview reports and notes from interviews conducted on twelve separate dates regarding some witnesses who had already testified and others who had yet to do so. Based on those additional disclosures, the defendants jointly moved for relief.

Following the additional disclosures, the district court considered the defense's motion and potential relief, stating that "[t]he motion raise[d] troubling concerns for the [c]ourt." Counsel for the Government represented to the court that counsel had not seen any of the newly disclosed documents before trial and that the Government was still working to ensure that all documents were disclosed to the defense, would complete its review of the documents, and would make any required disclosures by the end of the day. Faced with four Government witnesses tainted by the late disclosures, the district court discussed potential remedies with the parties and grappled with a range of possible relief, from striking testimony and recalling witnesses

3

No. 23-20326

to declaring a mistrial. The court deferred settling on the appropriate relief and instead ordered the Government to complete its review and make the required disclosures so that both parties could update the court and provide their requested relief in writing by the following morning. The district court also warned that a mistrial might be necessary if more witnesses were affected by additional disclosures.

Overnight, the Government made additional disclosures, and Breimeister, with two other defendants, filed an updated, joint motion for relief that outlined their individual proposals to remedy the untimely disclosures. Breimeister's section of the motion identified at least eight witnesses whose testimony was impacted. And the defendants all took issue with Government Exhibit 1—a large compilation of data upon which "[n]umerous summary exhibits [were] based"—arguing that the belated disclosures showed that the pre-admitted exhibit was unreliable. As for relief, Breimeister stated that he "oppose[d] a mistrial . . . unless one or more of the following" occurred:

1.    [T]he Government ma[de] a binding representation on the record that it w[ould] not retry him;

2.    the [c]ourt ma[de] a finding that it was forced to order a mistrial *sua sponte* solely because of the Government's misconduct and not at Breimeister's request; or

3.    the [c]ourt ma[de] a finding that Government agents . . . intentionally omitted favorable information from the written 302s that the agents prepared for the prosecutors to produce to defense counsel.

Breimeister further argued that "[d]eclaring a mistrial at this juncture—without any of the above occurring—would prejudice" him by depriving him of the opportunity to move for acquittal when the Government rested or to have the jury render a verdict, thereby guaranteeing the Government a

4

No. 23-20326

second bite at the apple. As an alternative to a mistrial, Breimeister proposed a complex, eight-part "combination of relief." The Government filed a response that also proffered alternatives to a mistrial.

The district court reconvened later that morning, stated that it had considered the parties' written motions for relief, and without hearing argument, declared a mistrial *sua sponte*. In doing so, the district court explained that alternative remedies would not suffice and noted that the testimony of at least six of the twenty-one witnesses—roughly a third—had been tainted by the Government's late disclosures. The court determined that "[t]he impacts of these disclosures ha[d] been far ranging and significant." The district court also explained that the burden upon the jury to render a fair verdict would be "too heavy" given the extent of the required curative instructions. Thus, after considering various alternatives, and "not on the motion of any particular defendant," the district court declared a mistrial. No party objected, and the court recessed. Before calling in and dismissing the jury, the court invited the parties to offer argument. No party objected at that time, either, and the district court then dismissed the jury.

Breimeister subsequently moved to dismiss his indictment and to bar retrial under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution due to the Government's misconduct. The district court initially denied the motion summarily, but Breimeister successfully moved the district court to reconsider. The district court then held a hearing and upon reconsideration again denied Breimeister's request because a mistrial was a "manifest necessity" and because the Government's misconduct was unintentional. Breimeister timely noticed this appeal.

No. 23-20326

## II.

We have jurisdiction over Breimeister's interlocutory appeal because he challenges the denial of a motion to dismiss on double jeopardy grounds, and his double jeopardy claim is at least "colorable," meaning that "there is some possible validity to the claim." *United States v. Sarabia*, 661 F.3d 225, 228–29 (5th Cir. 2011) (quotation marks and citations omitted) (alterations accepted); *accord Abney v. United States*, 431 U.S. 651, 662 (1977).

"We review the district court's denial of a motion to dismiss an indictment on double jeopardy grounds *de novo* and accept the underlying factual findings of the district court unless clearly erroneous." *United States v. Gonzalez*, 76 F.3d 1339, 1342 (5th Cir. 1996). "The decision to declare a mistrial is within the sound discretion of the trial court." *Grandberry v. Bonner*, 653 F.2d 1010, 1014 (5th Cir. 1981) (citing *Arizona v. Washington*, 434 U.S. 497, 514 (1978)). But "[o]ur review of the denial of a double jeopardy claim following declaration of a mistrial is plenary." *United States v. El-Mezain*, 664 F.3d 467, 559 (5th Cir. 2011). The inquiry is "plenary" in that "we are free to scrutinize the entire record and are not limited to only those findings made contemporaneously with the mistrial order" to assess "whether the trial judge 'carefully considered the alternatives and did not act in an abrupt, erratic or precipitate manner.'" *United States v. Bauman*, 887 F.2d 546, 550 (5th Cir. 1989) (quoting *Grandberry*, 653 F.2d at 1014).

## III.

The Double Jeopardy Clause provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Thus, once a jury is empaneled and sworn, a criminal defendant has the right to receive a verdict from that particular jury. *United States v. Palmer*, 122 F.3d 215, 218 (5th Cir. 1997); *see also Illinois v. Somerville*, 410 U.S. 458, 467–68 (1973). But that right "is not absolute." *Palmer*, 122

No. 23-20326

F.3d at 218. Our court has recognized two instances in which a defendant may be retried following a mistrial consistent with the Double Jeopardy Clause. First, "[a]bsent prosecutorial or judicial overreaching, a defendant's motion or consent to mistrial ordinarily is assumed to remove any barrier to reprosecution." *Cherry v. Dir., State Bd. of Corr.*, 635 F.2d 414, 417 (5th Cir. 1981) (en banc). And second, where "a defendant does not consent to a mistrial, the Clause permits reprosecution only if there was manifest necessity for the mistrial." *United States v. Fisher*, 624 F.3d 713, 718 (5th Cir. 2010). Breimeister contends that this case presents neither scenario because the district court declared a mistrial (A) without his consent and (B) without a "manifest necessity" to do so, such that the Double Jeopardy Clause prohibits the Government from retrying him. We disagree on both points.

## A.

Our first inquiry is whether Breimeister consented to a mistrial, thereby forfeiting his double jeopardy claim. "If a defendant consents to a mistrial, . . . double jeopardy ordinarily will not bar a reprosecution." *El-Mezain*, 664 F.3d at 559. The defendant's consent "may be express or implied through a failure to object." *Id.* "If a defendant does not timely and explicitly object to a trial court's *sua sponte* declaration of mistrial, that defendant will be held to have impliedly consented to the mistrial and may be retried in a later proceeding." *Palmer*, 122 F.3d at 218. "The determination of whether a defendant objected to a mistrial is made on a case-by-case basis, and the critical factor is whether a defendant's objection gave the court sufficient notice and opportunity to resolve the defendant's concern." *El-Mezain*, 664 F.3d at 559.

According to the Government, Breimeister consented to the mistrial in one of two ways. First, the Government suggests that Breimeister expressly consented to the mistrial because the district court satisfied one of

7

No. 23-20326

the specific conditions under which he said he would consent to a mistrial as laid out in his motion for relief—that the court find "that it was forced to order a mistrial *sua sponte* solely because of the Government's misconduct and not at Breimeister's request." Second, the Government maintains that even if Breimeister did not expressly consent to the mistrial, he impliedly did so by failing to object contemporaneously to the mistrial declaration. The Government contends that the mistrial declaration at least arguably satisfied Breimeister's above condition, such that it was incumbent upon Breimeister to put the district court clearly on notice that he continued to object to a mistrial. Failing to do so, he impliedly consented to the court's mistrial declaration.

Breimeister rejoins that his anticipatory, conditional objection was clear enough to put the district court on notice that he objected to the mistrial as declared, and that he was not required to seek clarification or renew that objection in open court.[1]

True enough, once Breimeister filed his written objection, he did not need to renew that objection in open court so long as the district court's ultimate mistrial declaration clearly fell within the scope of his objection. *See United States v. Santiago*, 96 F.4th 834, 848 (5th Cir. 2024) (citing *United States v. Medina-Anicacio*, 325 F.3d 638, 642 (5th Cir. 2003)); *see also Lang v. Tex. & P. Ry. Co.*, 624 F.2d 1275, 1279 (5th Cir. 1980) (explaining that "failure to object may be disregarded if the party's position has previously been made clear to the court and it is plain that a further objection would have been

---

[1] Breimeister also maintains that the district court gave him no opportunity to object contemporaneously with the mistrial declaration. But the record belies that assertion. After conferring with counsel outside the presence of the jury, notifying the parties that it would declare a mistrial, and taking a short recess, the district court gave the parties an opportunity to be heard before calling in the jury, ordering a mistrial in its presence, and dismissing it. No party objected in that interlude.

No. 23-20326

unavailing"). But the critical question is whether Breimeister's anticipatory objection *clearly* applied to the mistrial *as declared* by the district court. *See El-Mezain*, 664 F.3d at 559.

Breimeister fails to show that it did. Put differently, his written motion did not clearly put the district court on notice that the mistrial as declared failed to satisfy one of his conditions. His motion stated that he would consent to a mistrial if "the [c]ourt ma[de] a finding that it was forced to order a mistrial *sua sponte* solely because of the Government's misconduct and not at Breimeister's request." There is no dispute that the district court declared a mistrial *sua sponte*—"not on the motion of any particular defendant." And the district court at least arguably satisfied the remainder of Breimeister's condition: As it declared a mistrial, the court chastised the Government for its failure to disclose favorable evidence, considered sanctions of varying degrees, and promised a more fulsome investigation to determine whether "there was nefarious intent behind the failure to disclose." Whether the Government's discovery failures "were simple omissions or intentional," either of which can be "misconduct" in the double-jeopardy context,[2] those lapses were the only catalyst cited by the district court in declaring a mistrial. Thus, even viewing the record in Breimeister's favor, it is at best unclear whether the district court satisfied Breimeister's stated condition and, therefore, whether Breimeister

---

[2] Breimeister vaguely uses the term "misconduct" in his motion for relief, and on appeal, he ignores that our double jeopardy jurisprudence recognizes varying degrees of "misconduct," including forms of "grossly negligent" misconduct, that do not bar retrial. *See United States v. Singleterry*, 683 F.2d 122, 123 n.1 (5th Cir. 1982). Thus, his broadbrush use of that term, without more, only adds to the lack of clarity in his objection. Further exacerbating the uncertainty, Breimeister's third condition also lacks specificity that an intentional omission of "favorable information from the written [Form] 302s that the agents prepared for the prosecutors to produce to defense counsel" would necessarily preclude retrial. *See id.*; *United States v. Wharton*, 320 F.3d 526, 531 (5th Cir. 2003).

No. 23-20326

maintained an objection—or impliedly consented—to the district court's mistrial as declared.

Given that lack of clarity, Breimeister fails to demonstrate that his anticipatory motion for relief "gave the court sufficient notice and opportunity to resolve the defendant's concern" with the court's ultimate mistrial declaration. *See El-Mezain*, 664 F.3d at 559. As a result, Breimeister's failure to object contemporaneously constitutes implied consent to the mistrial. *See Palmer*, 122 F.3d at 218. For that reason, the Double Jeopardy Clause does not preclude the Government from retrying him. *Id.*

Of course, there is "a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial" where a defendant consents to a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 675–76 (1982). Where "the defense moves for, or consents to, a mistrial, the Double Jeopardy Clause may bar retrial if the [G]overnment intended to goad the defendant into [consenting to] a mistrial." *Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011) (quotation marks and citations omitted). But that "standard is exacting." *Id.* It is not enough to show "that the prosecutor intend[ed] to 'seriously prejudice' the defendant's chances of acquittal." *United States v. Singleterry*, 683 F.2d 122, 123 n.1 (5th Cir. 1982) (citation omitted). "Government misconduct 'that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion[,] does not bar retrial.'" *Martinez*, 644 F.3d at 243 (alterations accepted) (quoting *Kennedy*, 456 U.S. at 675–76). "Not even the [G]overnment's 'gross negligence' would prevent a retrial of the defendant." *Id.* (quoting *Robinson v. Wade*, 686 F.2d 298, 306 & n.17 (5th Cir. 1982)). Rather, "there must be intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *United States v. Wharton*, 320 F.3d 526, 531 (5th Cir. 2003) (emphasis omitted) (quoting *Kennedy*, 456 U.S. at 675–76). "Once the court determines that the

No. 23-20326

prosecutor's conduct was not intended to terminate the trial, 'that is the end of the matter for purposes of the Double Jeopardy Clause.'" *Id.* at 532 (quoting *Kennedy*, 456 U.S. at 679).

Here, the district court conducted a thorough post-trial inquiry into the Government's discovery failures by holding "multiple hearings and status conferences" and hearing "from the Government regarding its investigation into the prosecution team's conduct that led the [c]ourt to declare a mistrial." Only then did the district court determine that the Government's oversights in this case were "not malicious or intentionally fraudulent."[3] That finding was not clearly erroneous. And because the Government did not make late disclosures with the intent to "terminate the trial" in an effort to "subvert the protections afforded by the Double Jeopardy Clause," that "is the end of the matter." *Id.* at 531–32 (quoting *Kennedy*, 456 U.S. at 679).

**B.**

Even if we assumed that Breimeister clearly objected to the mistrial ordered by the district court, the Government may still retry him consistent with the Double Jeopardy Clause. That is because the district court did not abuse its discretion in declaring a mistrial due to "manifest necessity."

"When a defendant does not consent to a mistrial, the [Double Jeopardy] Clause permits reprosecution only if there was manifest necessity

---

[3] Breimeister contends that the district court erred by denying him an evidentiary hearing and the opportunity to question the prosecutors under oath. But "a district court's decision not to hold an evidentiary hearing before denying a motion to dismiss an indictment is reviewed for an abuse of discretion." *United States v. Gutierrez*, 343 F.3d 415, 421 (5th Cir. 2003). Given the district court's efforts in this case to investigate the matter, the court did not abuse its discretion in denying Breimeister a separate evidentiary hearing or the opportunity to depose prosecutors.

No. 23-20326

for the mistrial." *Fisher*, 624 F.3d at 718 (citing *Washington*, 434 U.S. at 505). But "[m]anifest necessity does not mean absolute necessity that a judge declare a mistrial." *Cherry*, 635 F.2d at 418. Instead, "we assume that there are degrees of necessity[,] and we require a high degree before concluding that a mistrial is appropriate." *Id.* at 418 (quoting *Washington*, 434 U.S. at 506). "Our determination of manifest necessity is not cabined by the explanations that the trial court has explicitly set forth." *Fisher*, 624 F.3d at 718. "Rather, th[is] court is free to scrutinize the entire record." *Id.*

Though we "accord 'great deference' to the trial judge's 'sound discretion' in declaring a mistrial," *Cherry*, 635 F.2d at 418 (quoting *Washington*, 434 U.S. at 514), our "standard of review in such cases is not static" and "varies depending on the cause of the mistrial." *Fisher*, 624 F.3d at 718. At one end of the spectrum, "the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Washington*, 434 U.S. at 508. At the other end, "broad deference is appropriate" where a trial judge declares a mistrial due to jury bias or deadlock. *Fisher*, 624 F.3d at 718. "Thus, our first task is to determine the standard of review by identifying the cause of the mistrial." *Id.* at 719.[4]

---

[4] Breimeister contends that the "manifest necessity" standard does not apply because any "manifest necessity" arose from the Government's discovery failures. Specifically, Breimeister relies on *United States v. Alford*, 516 F.2d 941, 946 (5th Cir. 1975), where this court said in *dicta* that "[m]anifest necessity does not exculpate the prosecution from the constrictions of the [D]ouble [J]eopardy [C]lause where there has been prosecutorial overreaching." But even if this case is one of "prosecutorial overreaching," both our en banc court and the Supreme Court have recognized since *Alford* that even "when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused," the manifest-necessity test still applies; the level of Government misconduct merely modifies the degree of

No. 23-20326

In this case, the district court declared a mistrial because of the Government's inadvertent failure to disclose favorable evidence to the defense until the fifth week of trial.[5]  The court determined that the untimely disclosures, coupled with the low likelihood that any curative measures or instructions to the jury would ensure a fair verdict, created a "manifest necessity" for the mistrial.  While this court has not yet had occasion to place unintentional discovery-related lapses by the Government on our standard-of-review spectrum, we are convinced that this case merits more scrutiny than the "broad deference" afforded trial courts in juror-bias or jury-deadlock cases.  *See Fisher*, 624 F.3d at 718.  Yet the district court's manifest-necessity finding is entitled to more deferential treatment than the "strictest scrutiny" because, as the district court found, the mistrial was not "br[ought] about . . . in bad faith for tactical reasons."  *See Cherry*, 635 F.2d at 418 n.6.  Nor was a mistrial declared because "a prosecutor proceed[ed] to trial aware that key witnesses [we]re not available to give testimony," thereby giving the prosecutor a "trial run of his case."  *Washington*, 434 U.S. at 508 n.24 (quotation marks and citations omitted).

Wherever we might precisely plot this case along our standard-of-review spectrum, "the ultimate inquiry is whether the trial judge exercised sound discretion in declaring a mistrial."  *Lewis v. Bickham*, 91 F.4th 1216, 1223 (5th Cir. 2024) (per curiam) (quotation marks and citation

---

deference afforded to the district court on review. *See Washington*, 434 U.S. at 508; *Cherry*, 635 F.2d at 418 n.6.

[5] Breimeister casts the Government's conduct as intentional, centering on the evidence in Chan's notes that prosecutors coached Chan on which sources to disclose, and not to disclose, on the summary exhibits he prepared.  While those notes suggest some intentionality by the Government, Chan's exhibits and testimony did not in themselves trigger the mistrial; they precipitated the revelation of the broader discovery lapses that did.  And nothing in the record before us suggests the district court clearly erred in finding that those lapses by the Government were unintentional.

omitted).  Indeed, the district court retains discretion to order a mistrial "whenever, in [its] opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Featherston v. Mitchell*, 418 F.2d 582, 583 (5th Cir. 1969) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824)); *see also Fisher*, 624 F.3d at 720–21 (recognizing that even under the "strictest scrutiny" standard, the district court has discretion to order a mistrial due to manifest necessity after conducting "a careful investigation"). Thus, we ask "whether the trial judge 'carefully considered the alternatives and did not act in an abrupt, erratic or precipitate manner.'" *Bauman*, 887 F.2d at 550 (quoting *Grandberry*, 653 F.2d at 1014).

Here, the district court acted within its discretion in declaring a mistrial due to "manifest necessity." Five weeks into a complex healthcare-fraud trial, at least six of twenty-one witnesses' testimony required curative measures, including the possibility of instructing the jury to disregard specific exhibits and portions of testimony spanning the entire trial to date. Faced with this dilemma, the district court requested briefing from all parties as to their preferred remedies and considered the proposed alternatives. But the district court found it unlikely that the jury could render a fair verdict, given the jury instructions required and the heavy burden that would be placed upon the jury to sort tainted evidence from untainted evidence. Thus, the district court came "to the heavy decision that justice require[d] a mistrial," and declared one *sua sponte*.

Breimeister persists that the district court erred because he and the Government "agreed that reasonable alternatives existed for the trial to proceed and proposed specific alternatives," and because the district court did not "confer with the jury to determine whether those alternatives were viable before declaring a mistrial." But "the mere existence of alternatives does not mean that the granting of a mistrial precludes retrial of the defendant

No. 23-20326

where 'reasonable judges could differ about the proper disposition,' and where the record, considered as a whole, indicates that the trial judge in deciding to declare a mistrial, carefully considered the alternatives . . . ." *Grandberry*, 653 F.2d at 1014 (citations omitted); *see also Cherry*, 635 F.2d at 418–19 (alterations accepted) (quoting *Washington*, 434 U.S. at 511). "Though alternatives to a mistrial must be considered, 'the Constitution does not require canvassing of specific alternatives or articulation of their inadequacies.'" *Lewis*, 91 F.4th at 1226 (quoting *Cherry*, 635 F.2d at 418). The mere "availability of another alternative does not without more render a mistrial order an abuse of sound discretion." *Cherry*, 635 F.2d at 419.

Here, the district court "'carefully considered the alternatives and did not act in an abrupt, erratic or precipitate manner'" in finding that the circumstances of this case necessitated a mistrial. *Bauman*, 887 F.2d at 550 (quoting *Grandberry*, 653 F.2d at 1014). Over several days, mid-trial, the district court conferred with counsel, requested and reviewed briefing, and heard argument regarding potential remedies that might have allowed the trial to proceed to verdict. But the district court found that no alternative was likely to result in a fair verdict and declared a mistrial due to manifest necessity. That decision was not an abuse of discretion, and as a result, the district court did not err in denying Breimeister's motion to dismiss the indictment against him on double jeopardy grounds.

## IV.

Because Breimeister consented to a mistrial—impliedly, if not expressly—without the Government's goading him into doing so, he has forfeited his double jeopardy claim. Beyond that, the district court did not abuse its discretion in declaring a mistrial due to "manifest necessity." Either way, the Double Jeopardy Clause does not preclude the Government

No. 23-20326

from retrying Breimeister, and the district court properly denied his motion to dismiss the indictment.  The ruling of the district court is

AFFIRMED.